## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRITNIE PRICE**                                          **CIVIL ACTION**

**VERSUS**                                                **NO. 21-1036**

**LUSTER PRODUCTS INC.**                                  **SECTION: "G"**

### ORDER AND REASONS

In this litigation, Plaintiff Britnie Price ("Plaintiff") brings claims against Defendant Luster Products, Inc. ("Defendant") for personal injuries sustained from the use of Defendant's product, the "PJC Crème Relaxer."[1] Before the Court is Defendant's "Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's Second Supplemental and Amended Complaint."[2] Defendant argues that Plaintiff's Complaint should be dismissed because, according to Defendant, (1) Plaintiff's claims are prescribed; (2) Plaintiff asserts causes of action not recognized under the Louisiana Product Liability Act ("LPLA"), which is Plaintiff's exclusive remedy under Louisiana law; and (3) the Complaint fails to state a claim under the LPLA.

As described in more detail below, Plaintiff has alleged facts to show that her claims are not prescribed. Although Plaintiff did not file suit until May 2021, Plaintiff alleges that she had no reason to know that her uterine fibroids may have been caused by the use of Defendant's product, and there is no reason to believe she could have discovered this cause with additional diligence. Plaintiff alleges that her doctors did not inform her of the cause of her injury, nor would Plaintiff's own research necessarily have led her to discover that Defendant's hair relaxer product was related

---

[1] Rec. Doc. 1 at 1.

[2] Rec Doc. 32.

1

to her uterine fibroids. It is a troubling proposition that her claims should be prescribed where neither her doctor nor the product itself provided any information to suggest that the use of hair relaxers could cause uterine fibroids. This is particularly concerning where, as here, the allegedly defective product is one commonly used by African American women who are at a disproportionately higher risk of developing uterine fibroids. Accordingly, as explained below, Plaintiff has alleged facts to show that her claims are not prescribed.

In addition, the Complaint states a claim under the Louisiana Product Liability Act that Defendant's product was unreasonably dangerous in construction and in its failure to provide an adequate warning. However, as described in detail below, the Complaint fails to state a claim under the Louisiana Product Liability Act that the product was unreasonably dangerous in design or its nonconformity with an express warranty. The Court will grant Plaintiff leave to amend the Complaint as to those claims, if possible. Lastly, Louisiana law does not allow plaintiffs to sue manufacturers for negligence or other causes of action independent from the LPLA. Therefore, the Court will grant Defendant's motion to dismiss only to the extent that it seeks dismissal of claims that are not within the LPLA.

## I. Background

On May 28, 2021, Plaintiff filed a complaint against Defendant in this Court.[3] She filed a first amended complaint on June 2, 2021,[4] and a second amended complaint on January 12, 2022.[5] Plaintiff alleges that she was exposed to chemicals in Defendant's PJC Crème Relaxer from about

---

[3] Rec. Doc. 1.

[4] Rec. Doc. 5.

[5] Rec. Doc. 31.

1999 until 2013.[6] Plaintiff alleges that over the course of several years, she visited multiple urgent care facilities complaining of heavy bleeding and abdominal pain.[7] Plaintiff further alleges that she was diagnosed with uterine fibroids and underwent an abdominal myomectomy in August 2018.[8] Plaintiff avers that during the time that she used the PJC Crème Relaxer, prior to her uterine fibroids diagnosis, she did not know that exposure to the product could be dangerous.[9]

Plaintiff alleges that Defendant's PJC Crème Relaxer was (1) defective in design or formulation; (2) contained insufficient warnings to alert Plaintiff to the product's risks; (3) was not fit for its intended purpose; (4) did not conform to Defendant's express representations; (5) contained a hidden defect which rendered the product unfit for ordinary use; and (6) was in breach of its warranty of fitness.[10] Additionally, Plaintiff "pleads the doctrine of *res ipsa loquitor*, and/or that Defendant is strictly liable" for her injuries.[11]

On September 27, 2021, Defendant filed a motion to dismiss.[12] On January 12, 2022, with leave of Court, Plaintiff filed a second amended complaint,[13] rendering the motion to dismiss moot.[14] On January 25, 2022, Defendant filed the instant motion to dismiss the second amended

---

[6] Rec. Doc. 1 at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 5–6.

[11] *Id.* at 6.

[12] Rec. Doc. 10.

[13] Rec. Doc. 31.

[14] Rec. Doc. 33.

complaint.[15] On February 15, 2022 Plaintiff opposed the motion.[16]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion*

Defendant argues that the motion should be granted for three reasons. First, Defendant contends that all of Plaintiff's claims are prescribed. Second, Defendant argues that Plaintiff cannot recover under the Louisiana Products Liability Act ("LPLA"). Third, Defendant contends that even if Plaintiff could assert claims under the LPLA, the second amended complaint fails to state a claim under the pleading requirements of the Federal Rules of Civil Procedure.[17]

### 1.    Prescription

Defendant argues that all of Plaintiff's claims are prescribed.[18] Defendant contends that Plaintiff's claims are subject to Louisiana Civil Code article 3492, which provides for a one-year prescriptive period for all "delictual actions."[19] Defendant further contends that this period begins to run as soon as the injury or damage is sustained with "sufficient certainty to support accrual of a cause of action."[20] Defendant argues that this point is reached "on the date an individual is diagnosed with an illness, regardless of when the individual discovers its potential cause," because the diagnosis gives a plaintiff sufficient notice to "inquire about the cause" of the condition.[21] Defendant notes that the complaint alleges that Plaintiff was diagnosed with and underwent surgery

---

[15] Rec. Doc. 32.

[16] Rec. Doc 34.

[17] *Id.*

[18] Rec. Doc. 32-1 at 6.

[19] *Id.*

[20] *Id.*

[21] *Id.*

for uterine fibrosis in August 2018.[22] Thus, Defendant argues that "[a]t best," the prescriptive period for Plaintiff's claims began to run in August 2018. Because Plaintiff did not file her complaint until May 28, 2021, Defendant argues that the one-year prescriptive period applicable to her claims has run.[23]

Defendant further contends that the doctrine of *contra non valentem* does not apply to Plaintiff's claims.[24] Defendant argues that *contra non valentem* can only be invoked as an "exception to the running of prescription when the cause of action reasonably cannot be known to the plaintiff," and that it does not apply where a plaintiff's "ignorance is attributable to his own willfulness or neglect."[25] Defendant argues that around the time of Plaintiff's surgery in August 2018, she "should have asked her treating physicians or any health care practitioners about the cause of her uterine fibroids."[26] Furthermore, Defendant contends that upon her diagnosis, Plaintiff "could have researched the causes of uterine fibrosis."[27] Defendant argues that Plaintiff's failure to do so renders the doctrine of *contra non valentem* inapplicable because Plaintiff failed to use "reasonable diligence" to discover her cause of action. Thus, Defendant contends that Plaintiff's claims are prescribed.

### 2.     Louisiana Products Liability Act

Next, Defendant contends that the Louisiana Products Liability Act limits the claims that

---

[22] *Id.* at 7.

[23] *Id.*

[24] *Id.* at 8.

[25] *Id.*

[26] *Id.*

[27] *Id.*

Plaintiff can assert for her injuries, and that several of the claims asserted in the second amended complaint are outside the scope of the LPLA.[28] Defendant relies on the LPLA's exclusivity provision, which states that "[a] claimant may not recover from a manufacturer for damages caused by a product on the basis of any other theory of liability that is not set forth in this chapter."[29] Defendant contends that the second amended complaint asserts several causes of action that are outside the scope of the LPLA, including negligence, breach of warranty, redhibition, *res ipsa loquitor*, conspiracy, strict products liability, and fraudulent misrepresentation.[30] Defendant contends that although the requirements for asserting a claim under the LPLA "are predicated on principles of strict liability, negligence, or warranty," they are not viable independent causes of action under the LPLA.[31] Rather, Defendant argues that Plaintiff's causes of action are limited to those enumerated in the LPLA.[32] Thus, Defendant argues that "all of Plaintiff's non-LPLA causes of action must be dismissed."[33]

Defendant next argues that although the LPLA permits a claim "in 'redhibition' against a manufacturer for 'economic' loss for a latent defect in the product," recovery is limited to "economic loss only, not personal injury damage."[34]

Lastly, Defendant argues that the second amended complaint fails to state a claim under the LPLA. Defendant contends that the complaint is "void of any reference to the LPLA and/or

---

[28] *Id.* at 14.

[29] *Id.* at 10.

[30] *Id.* at 11–12.

[31] *Id.* at 13.

[32] *Id.* at 13–14.

[33] *Id.* at 13.

[34] *Id.*

reference that [Defendant] is liable under the LPLA."[35] Rather, Defendant contends that the complaint "formulaically recite[s] scattered words and phrases from the LPLA."[36] Defendant argues that the Complaint's allegation that the PJC Crème Relaxer is defective, unreasonably dangerous, unfit for ordinary use, nonconforming with Defendant's express representations, and lacking adequate warnings are "conclusory allegations [that] are textbook examples of insufficient pleading[s]" under *Twombly* and *Iqbal*.[37] As to Plaintiff's manufacturing-defect claim, Defendant contends that Plaintiff has failed to allege that the product that injured Plaintiff "deviated from its design or from 'the manufacturer's otherwise identical products."[38] As to Plaintiff's design-defect claim, Defendant argues that Plaintiff has failed to allege that there was an alternative design that was available and known to Defendant.[39] As to Plaintiff's failure to warn claim, Defendant argues that Plaintiff has failed to allege that but for the inadequate warning, Plaintiff would not have used the product.[40] Lastly, as to Plaintiff's warranty claim, Defendant argues that Plaintiff has not alleged the "existence of any express warranty or what the express warranty may be."[41]

**B.      *Plaintiff's Opposition to the Motion to Dismiss***

In opposition to the motion, Plaintiff argues that her "claims under [the] LPLA and Redhibition are sufficiently plead."[42] Plaintiff contends that the complaint "unequivocally

---

[35] *Id.* at 15.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 17.

[39] *Id.* at 18.

[40] *Id.* at 19.

[41] *Id.* at 20.

[42] Rec. Doc. 34 at 6.

allege[s] that she used Luster's hair relaxer product as directed by its label, and unknown to her, and without warning on the product label, the product contained hazardous chemicals that are correlated to the development of uterine fibroids."[43] Plaintiff argues that she has "sufficiently alleged" that Defendant manufactured the product, that the product was warranted and marketed to Plaintiff, that it contained hazardous chemicals known to cause uterine fibroids, and that she developed uterine fibroids as a result.[44] Plaintiff argues that at the motion to dismiss stage, her complaint need only plausibly alleged "enough information that, with discovery, she could prove [Defendant is] liable under the LPLA."[45]

Plaintiff further argues that her claims are not prescribed. Plaintiff argues that prescription does not commence until she "had actual or constructive knowledge of the tortious act, the damage caused, and the causal relationship between the tortious act and the damage."[46] However, Plaintiff contends that she was not made aware, nor had any reason to believe that the PJC Crème Relaxer was related to her uterine fibroids until 2021.[47] Plaintiff argues that in "early 2021," "[a]s a novice Physical Therapist by profession, [she] was assigned the task of studying an area of woman's health when she came across medical articles that correlate the use of hair relaxers and uterine fibroids."[48] Therefore, Plaintiff contends that the May 28, 2021 complaint was within the one year prescriptive period.[49]

---

[43] *Id.* at 7.

[44] *Id.* at 8.

[45] *Id.* at 9.

[46] *Id*. at 10.

[47] *Id.*

[48] *Id.*

[49] *Id.*

In response to Defendant's arguments that prescription began to run when Plaintiff was diagnosed and treated for uterine fibroids, Plaintiff asserts that this argument is "based on a flawed assumption that [Plaintiff's] treating physician notified her that the hair relaxer product was the cause of her uterine fibroid diagnosis."[50] Plaintiff further contends that Defendant "cannot present any reason or evidence as to 'why' [she] should have had any reason to suspect" that the hair relaxer was the cause of her diagnosis.[51] Plaintiff contends that the date of her diagnosis and surgery have "nothing to do with [Plaintiff's] ability to know the hair relaxer product was the potential source of her uterine fibroids, and is nothing more than a red herring argument raised by Luster for prescription purposes."[52]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[53] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[54] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[55]

The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[56] The complaint need not contain detailed factual allegations, but it must offer more than

---

[50] *Id.* at 11.

[51] *Id.*

[52] *Id.* at 12.

[53] Fed. R. Civ. P. 12(b)(6).

[54] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[55] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[56] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a

mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[57] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[58]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal conclusions as true.[59] "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."[60] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[61] If the factual allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable" bar to relief exists, the claim must be dismissed."[62]

A court considering a motion to dismiss "must limit itself to the contents of the pleadings, including attachments thereto."[63] Attachments to a motion to dismiss are, however, "considered part of the pleadings" if "they are referred to in the plaintiff's complaint and are central to her claim."[64] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the

---

"reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[57] *Iqbal*, 556 U.S. at 678.

[58] *Id.*

[59] *Id.* at 677–78.

[60] *Id.* at 679.

[61] *Id.* at 678.

[62] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[63] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[64] *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (internal quotation marks omitted).

suit, and the court in making the elementary determination of whether a claim has been stated."[65]

## IV. Analysis

In the instant motion, Defendant urges the Court to dismiss all of Plaintiff's claims because they have prescribed. Defendant also argues that Plaintiff has failed to state claim under the LPLA. The Court will address each argument in turn.

### A.      Whether Plaintiff's Claims Prescribed

The Fifth Circuit has instructed that a Rule 12(b)(6) motion to dismiss on the basis of prescription should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."[66] When presented with a state law claim, "federal courts apply state statutes of limitations and related state law governing tolling of the limitation period."[67] "[U]nder Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."[68] However, "that does not mean that every prescriptive statute must be interpreted in order to avoid prescription."[69] Furthermore, the party pleading prescription has the burden of proving prescription.[70] Nevertheless, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.[71]

---

[65] *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013) (quoting *Collins*, 224 F.3d at 498–99).

[66] *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983).

[67] *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989).

[68] *Bustamento v. Tucker*, 607 So. 2d 532, 537 (La. 1992).

[69] *Turner v. Willis Knighton Medical Center*, No. 12-0703 (La. 12/4/12); 108 So. 3d 60, 65.

[70] *Carter v. Haygood*, No. 04-0646 (La. 1/19/05); 892 So.2d 1261, 1267.

[71] *Id.*

When determining the applicable prescriptive period, Louisiana courts look to "the character of an action disclosed in the pleadings."[72] Louisiana Civil Code article 3499 provides that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."[73]  However, Louisiana Civil Code article 3492 provides that "delictual actions are subject to a liberative prescription of one year."[74] "A delictual action is a tort action or an action seeking damages for injury caused by the act of another."[75] Under article 3492, "prescription commences to run from the day injury or damage is sustained."[76]

Here, it is undisputed that the one-year prescriptive period of article 3492 applies to Plaintiff's claims. Under article 3492, the prescriptive period begins to run "from the day injury or damage is sustained." As the Fifth Circuit has recently explained, this article "does not incorporate equitable-tolling principles as do some other Louisiana prescriptive statutes."[77] Therefore, for purposes of determining whether a complaint is prescribed on its face, Louisiana courts "look to when the injury was sustained to determine when the prescription period began to run."[78] Then, the burden shifts to the plaintiff to establish some exception to prescription.[79] Thus, because Plaintiff's injury was sustained, at the latest, in August 2018 when she was treated for uterine

---

[72] *Starns v. Emmons*, 538 So. 2d 275, 277 (La. 1989).

[73] La. Civ. Code art. 3499.

[74] La. Civ. Code art. 3492.

[75] *Cosse v. Orihuela*, No. 12-456 (La. App. 5 Cir. 1/30/13); 109 So. 3d 950, 953 (internal quotations omitted) (quoting *Langlois v. Allied Chem. Corp.*, 249 So. 2d 133, 136 (La. 1971)).

[76] La. Civ. Code art. 3492.

[77] *In re Taxotere Products Liability Litigation*, 995 F.3d 384, 389–90 (5th Cir. 2021).

[78] *Id.* at 390.

[79] *Carter v. Haygood*, No. 04-0646 (La. 1/19/05), 892 So. 2d 1261, 1267.

fibroids, and she did not file this lawsuit until May 2021, her claims are prescribed on the face of the complaint.[80]

However, Louisiana law recognizes "a firmly rooted equitable-tolling doctrine known as *contra non valentem*"[81] which "prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff."[82] This ground for *contra non valentem* is commonly known as the "discovery rule."[83] Under the discovery rule, "[p]rescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[84] "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry."[85] "[T]he ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his [or her] education, intelligence, and the nature of the defendant's conduct."[86] For purposes of the discovery rule, "a plaintiff is deemed to know what he [or she] could have learned by

---

[80] *Tenorio v. Exxon Mobil Corp.*, 14-814 (La. App. 5 Cir. 4/15/15); 170 So. 3d 269; 274 ("From the face of the petition, [the plaintiff's] claims are prescribed because he was diagnosed with throat cancer in November 2009 but did not file his action until April 2014."); *Wilhike v. Polk*, 08-0379 (La. App. 4 Cir. 11/19/08); 999 So. 2d 83, 85–86 (finding that because the plaintiff's son had been diagnosed in 2003, and the suit was not filed until 2007, the petition was prescribed on its face); *In re Taxotere*, 995 F.3d at 390 (finding that plaintiffs' claims were facially prescribed because their injuries were sustained six months after the completion of chemotherapy but they did not file suit until several years later).

[81] *In re Taxotere*, 995 F.3d at 390.

[82] *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993).

[83] *Guerin v. Travelers Indemnity Co.*, 19-0861 (La. App. 1 Cir. 2/21/20); 296 So. 3d 625, 628.

[84] *Campo v. Correa*, 01-2707 (La. 6/21/02); 828 So. 2d 502, 510.

[85] *Jenkins v. Starns*, 11-1170 (La. 1/24/12); 85 So. 3d 612, 620.

[86] *Marin*, 48 So.3d at 246.

reasonable diligence."[87]

Here, Plaintiff contends that her claims are not prescribed because she "was not made aware, or had any reason to believe that [Defendant's] hair relaxer product was correlated to her uterine fibroids until sometime early in the year of 2021."[88] Defendant, on the other hand, argues that Plaintiff's diagnosis and treatment for uterine fibroids in August of 2018 was sufficient to give her constructive notice of her claim.[89] However, it is not clear to the Court at this stage of the litigation that Plaintiff could have learned of the connection between her uterine fibroids and the PJC Crème Relaxer.

Defendant argues that Plaintiff "could have researched the causes of uterine fibroids."[90] Although a plaintiff is "deemed to know what [s]he could have learned with reasonable diligence," the Court cannot determine at this stage of litigation whether Plaintiff could have learned of the connection between her uterine fibroids and the PJC Crème Relaxer with further diligence. Defendant notes that a "mere Google search retrieves search results of articles published in the American Journal of Epidemiology dated prior to 2013 addressing hair relaxer use and risk of uterine fibroids in women."[91] However, in order to find such an article, Plaintiff would have had to *already know* of a connection between uterine fibroids and hair relaxers. Defendant does not suggest, for example, that a mere google search for the "causes of uterine fibroids" would invariably lead Plaintiff to discover that the hair relaxer was the cause. In fact, a mere google search

---

[87] *See, e.g., Morgan v. Entergy New Orleans, Inc.*, 16-1250 (La. App. 4 Cir. 12/6/17); 234 So. 3d 113, 117.

[88] Rec. Doc. 34 at 9.

[89] Rec. Doc. 32-1 at 6.

[90] Rec. Doc. 32-1 at 8.

[91] *Id.* at 10.

instead suggests that the cause of uterine fibroids is unknown, and that genetics and exposure to estrogen may be contributing factors.[92] Therefore, the fact that there may have been a journal article in 2013 suggesting that the use of hair relaxers *could be* related to uterine fibroids in no way demonstrates that it was unreasonable for Plaintiff not to discover the cause of her uterine fibroids earlier.

Defendant also contends that Plaintiff "should have asked her treating physicians or any health care practitioners about the cause of her uterine fibroids."[93] However, Plaintiff does allege that she presented to "multiple urgent care facilities" and was ultimately diagnosed with uterine fibroids for which she underwent an abdominal myomectomy.[94] Defendant's assumption that Plaintiff did not ask her physician about the cause of her condition is unfounded. Indeed, as discussed above, it is not clear that uterine fibroids have a singular known cause. At the motion to dismiss stage, the Court accepts all factual allegations as true and draws "all inferences in favor of the nonmoving party."[95] Plaintiff has alleged that she saw doctors for the symptoms she was having, and it was ultimately determined that she was suffering from uterine fibroids.[96] She has also alleged that prior to 2021, she had no reason to suspect that the PJC Crème Relaxer was the cause of her uterine fibroid diagnosis.[97] The reasonable inference to draw from these allegations is that Plaintiff's doctors did not know, or did not tell her, that the PJC Crème Relaxer was the

---

[92] Fibroids, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/uterinefibroids#:~:text=It%20is%20not%20known%20what,the%20abdomen%20and%20pelvic%20pain.

[93] Rec. Doc. 32-1 at 8.

[94] Rec. Doc. 1 at 4.

[95] *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017).

[96] Rec. Doc. 1 at 4.

[97] Rec. Doc. 31 at 1–2.

cause of her uterine fibroid diagnosis. The Court notes the fact that uterine fibroids are more common in African American women than in white women, suggesting that her doctor's failure to warn her of the risks may have been a byproduct of the historic trend of African American women's medical complaints being overlooked.[98] In any event, given that the PJC Crème Relaxer did not have a warning that it could cause uterine fibroids, and Plaintiff's doctors did not know or did not tell her what did cause her fibroids, it is unrealistic to demand that Plaintiff should have discovered the cause earlier.

Accepting Plaintiff's allegations as true, drawing all reasonable inferences in her favor, and heeding the Fifth Circuit's instruction not to dismiss a case based on prescription unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief,"[99] the Court denies Defendant's motion to dismiss based on prescription. Because Plaintiff alleges that she had no reason to suspect that her uterine fibroids were caused by her use of the PJC Crème Relaxer, and further inquiry would not have necessarily identified hair relaxers as the cause, the Court is not convinced that Plaintiff could have discovered the cause of her condition with additional diligence.

## B.    *Whether the Complaint States a Claim under the LPLA*

Defendant also argues that Plaintiff failed to state a claim under the LPLA. "To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1)

---

[98] *See, e.g.,* Juanita J. Chinn et al., Health Equity Among Black Women in the United States, J. of Women's Health, Feb. 2021; Kelly M. Hoffman et al., Racial Bias in Pain Assessment and Treatment Recommendations, and False Beliefs About Biological Differences Between Blacks and Whites, Proceedings of the Nat'l Acad. of Scis. of the U.S. of Am., Apr. 2016; Veronica Zaragovia, Trying to Avoid Racist Health Care, Black Women Seek Out Black Obstetricians, NPR (May 28, 2021, 5:00 AM), https://www.npr.org/sections/health-shots/2021/05/28/996603360/trying-to-avoid-racist-health-care-black-women-seek-out-black-obstetricians; Vidya Rao, 'You Are Not Listening to Me': Black Women on Pain and Implicit Bias in Medicine, Today (July 27, 2020, 11:44 AM).

[99] *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983).

that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."[100] A product is "unreasonably dangerous" under the third prong "if and only if" the product meets one of the following criteria:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.[101]

The LPLA also has an "exclusivity provision" which provides as follows:

> This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.[102]

Therefore, a plaintiff may not recover from a manufacturer in tort under any theory of liability that is not set forth in the LPLA.[103] Although the LPLA is "predicated on principles of strict liability, negligence or warranty," the Fifth Circuit has explained that these "are not available as theories of

---

[100] *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 260-261 (5th Cir. 2002); La. R.S.§ 9:2800.54

[101] La. Rev. Stat. § 9:2800.51

[102] La. Rev. Stat. § 9:2800.52.

[103] *See Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002); *Rhodes v. Covidien, LP*, No. 18-10667, 2019 WL 2162845 (E.D. La. May 17, 2019) (Vance, J).

recovery against a manufacturer, independent from the LPLA."[104]

Here, Defendant argues that the Complaint alleges several causes of action that are outside the scope of the LPLA, including negligence, breach of warranty, redhibition, res ipsa loquitor, conspiracy, and strict products liability.[105] Defendant contends that any causes of action outside the scope of the LPLA must be dismissed.[106] Plaintiff does not respond specifically as to which claims should survive, but rather states that her "claims under LPLA and redhibition are sufficiently plead."[107] Plaintiff argues that she has stated a claim because she alleged that Defendant manufactured the product, that it was marketed to Plaintiff to be used in her hair, that it contained chemicals that were hazardous to her health without providing an warning on the label, and that she developed uterine fibroids as a result.[108]

As stated above, the LPLA only recognizes causes of action based on unreasonably dangerous construction, design, lack of adequate warning, and nonconformity with an express warranty. However, the Fifth Circuit has explained that the LPLA has been interpreted "as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss."[109] Because Louisiana law does not permit causes of action outside the LPLA,[110] the Court will grant Defendant's motion to dismiss only as to the non-LPLA claims. The Court notes that in failing to respond to Defendant's argument as to these claims,

---

[104] *Stahl*, 283 F.3d at 261.

[105] Rec. Doc. 32-1 at 11–12.

[106] *Id.* at 14–15.

[107] Rec. Doc. 34 at 6.

[108] *Id.* at 8.

[109] *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 251 (5th Cir. 2002).

[110] *Stahl*, 283 F.3d at 261.

Plaintiff essentially concedes that they should be dismissed. Therefore, the Court will grant the motion as to these claims.

Plaintiff also asserts various claims that both parties agree are within the scope of the LPLA. Plaintiff's Complaint alleges that the PJC Crème Relaxer (1) is defective in its construction or composition; (2) is defective in its design; (3) lacks an adequate warning; and (4) does not conform to the manufacturer's express warranties. Plaintiff also asserts that Defendant is "liable to [Plaintiff] in redhibition."[111] The Court will address each claim in turn.

### 1.  Defect in Construction Claim

Under Louisiana law, "a product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."[112]A construction defect claim under the LPLA "provides a remedy for damages caused by a product that is defective due to a mistake in the manufacturing process."[113]

In *Flagg v. Stryker Corporation*, the Fifth Circuit discussed how much information a complaint must include in order to state a claim under the LPLA. The court explained that requiring plaintiffs to plead "extremely 'detailed factual allegations' that satisfy each element of a products liability action under the LPLA creates a situation where a manufacturer will not be held liable for defective products because it has sole possession of the necessary document to ultimately prove

---

[111] Rec. Doc. 1 at 5.

[112] La Rev. Stat. § 9:2800.55

[113] *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 262–63 (5th Cir. 2002).

the claim."[114] The Fifth Circuit specifically noted that product liability "is an area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations," and therefore plaintiffs need only "plausibly allege[] enough information that, with discovery, he [or she] could prove the [defendant is] liable under the LPLA."[115]

Here, Defendant argues that the Complaint fails to state a claim for a defect in construction because it does not specifically allege that the product deviated from the manufacturer's specifications. However, the Complaint does allege that the PJC Crème relaxer "is defective in its construction . . . in that it is not reasonably fit . . . for its intended purpose."[116] Although perhaps this allegation could have been clearer, the Court finds that it is sufficient to state a claim for a defect in construction.

### 2. Defect in Design Claim

Under Louisiana law, a product is unreasonably dangerous in design if, at the time the product left its manufacturer's control, the following conditions are met:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.[117]

Here, Plaintiff has not alleged that there was an alternative design that that could have

---

[114] *Flagg v. Stryker*, 647 F. App'x 314, 317 (5th Cir. 2016).

[115] *Id.* at 319.

[116] Rec. Doc. 31 at 2.

[117] La. Rev. Stat. § 9:2800.56.

prevented Plaintiff's injury. As discussed above, the Fifth Circuit in *Stagg* made clear that a complaint need not contain "extremely 'detailed factual allegations.'"[118] However, in reversing the district court's dismissal of the plaintiff's design defect claim, the Court explained that it did so because the plaintiff's allegation that "a different alloy . . . would have performed better" "suggest[ed that] an alternative design existed which would have reduced the risks of the original product."[119] Here,  Plaintiff has not alleged, in any form, that an alternative design for the PJC Crème Relaxer existed.[120] Therefore, Plaintiff's Complaint fails to state a claim that the product was unreasonably dangerous in design.

### 3. Inadequate Warning Claim

Under Louisiana law, "[a] product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product."[121]

Here, Plaintiff alleges that the PJC Crème Relaxer "contained warnings insufficient to alert [her] and/or [her] healthcare providers of the dangerous risks and reactions associated with the hazardous chemicals that are known, or should have been known, to cause an increased risk of developing uterine fibroids."[122] Plaintiff further alleges that when purchasing the product she

---

[118] *Flagg*, 647 F. App'x at 317.

[119] *Id.* at 318.

[120] *Id.*

[121] La Rev. Stat. § 9:2800.57.

[122] Rec. Doc. 31 at 2.

intended "to purchase a safe product that was intended to be used as a hair relaxer product, only. [Plaintiff] could not possibly anticipate or know that the product contained potentially hazardous chemicals that could expose her to increased risk of developing uterine fibroids at a young age."[123]

Defendant contends that these allegations are insufficient because they do not address the "risk-utility considerations relative to the warning" or "whether a warning would have changed the decision of Plaintiff or Plaintiff's healthcare providers."[124]

The Court disagrees. The Fifth Circuit has explained that in failure to warn cases under the LPLA, courts apply a "risk-utility analysis" where the inquiry is "whether a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product."[125] Here, accepting the allegations as true, and drawing all inferences in Plaintiff's favor, Plaintiff's allegation that the PJC Crème Relaxer's warnings were "insufficient to alert [her] . . . [to] the dangerous risks" and that she intended "to purchase a safe product" are sufficient to draw the reasonable inference that an adequate warning would have changed Plaintiff's decision to use the product. Therefore, the Court finds that Plaintiff has stated a claim under the LPLA for the failure to provide an adequate warning.

### 4. Express Warranty Claim

Under Louisiana law, "[a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage

---

[123] *Id.* at 3.

[124] Rec. Doc. 32-1 at 19.

[125] *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000).

was proximately caused because the express warranty was untrue."[126] The LPLA further defines

an express warranty as follows:

> "Express warranty" means a representation, statement of alleged fact or promise
> about a product or its nature, material or workmanship that represents, affirms or
> promises that the product or its nature, material or workmanship possesses specified
> characteristics or qualities or will meet a specified level of performance. "Express
> warranty" does not mean a general opinion about or general praise of a product. A
> sample or model of a product is an express warranty.[127]

Here, Plaintiff has not alleged what the express warranty was or what it guaranteed, nor

does Plaintiff allege that any such warranty induced Plaintiff to use the product.[128] Again, *Flagg*

is instructive. In that case, the Fifth Circuit affirmed the dismissal of the plaintiff's express

warranty claim because the plaintiff "fail[ed] to allege what was guaranteed by the express

warranty in relation to his claims that the [products] were defective, and [the plaintiff] does not

claim the express warranty induced [the plaintiff] or his doctor to use the device, as required."

Here, because Plaintiff similarly does not allege what the express warranty was or that it induced

Plaintiff to use the product, the Complaint fails to state a claim that the product was unreasonably

dangerous due to its nonconformity with an express warranty.

### 5.  Redhibition Claim

As explained above the Fifth Circuit has noted that the LPLA has been interpreted "as

preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value

---

[126] La. Rev. Stat. § 9:2800.58.

[127] La. Rev. Stat. § 9:2800.53(6).

[128] *See Flagg*, 647 F. App'x at 316 n.3 (affirming the dismissal of the plaintiff's express warranty claim because the plaintiff "fail[ed] to allege what was guaranteed by the express warranty in relation to his claims that the implants were defective, and Flagg does not claim the express warranty induced Flagg or his doctor to use the device, as required.")

of the product or other economic loss."[129] Therefore, a cause of action for redhibition exists "for economic loss only and not for personal injury claims."[130] Plaintiff's opposition to the instant motion does not respond to this argument. The Complaint states only that Defendant is "also liable to [Plaintiff] in redhibition inasmuch [as] it sold a product to [Plaintiff] containing a hidden defect which rendered the product unfit for ordinary use and so inconvenient that [Plaintiff] would not have purchased the product had she known of the defect."[131] Because the LPLA only recognizes a claim in redhibition for economic loss, Plaintiff's claim in redhibition is dismissed only to the extent it seeks recovery for Plaintiff's personal injuries.

## V. Conclusion

For the foregoing reasons, the Court denies the motion to dismiss to the extent it argues that dismissal is warranted based on prescription.  Furthermore, Plaintiff has stated a claim under the LPLA that the PJC Crème Relaxer was unreasonably dangerous in its construction and its failure to provide an adequate warning. However, Plaintiff has not stated a claim under the LPLA that the PJC Crème Relaxer was unreasonably dangerous in its design or its nonconformity with an express warranty. Nevertheless, the Court will allow Plaintiff leave to amend the Complaint to address the deficiencies identified in this Order as to those claims, if possible. The Court will not allow Plaintiff leave to amend as to her non-LPLA claims. Given that the LPLA provides the exclusive theories of liability against manufacturers for damage caused by their products, amendment as to Plaintiff's non-LPLA claims would be futile.

---

[129] *Pipitone*, 288 F.3d at 251.

[130] *De Atley v. Victoria's Secret Catalogue, LLC*, No.04-661 (La. App. 4 Cir. 5/14/04); 876 So. 2d 112, 115.

[131] Rec. Doc. 1 at 5.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's Second Supplemental and Amended Complaint"[132] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extend it seeks dismissal of all claims outside the LPLA and Plaintiff's claim in redhibition for personal injuries. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend the Complaint within 30 days of this Order to cure the deficiencies noted as to the design and express warranty claims, if possible. If Plaintiff fails to amend the Complaint, or if Plaintiff amends the Complaint and the amendments do not cure the deficiencies identified in this Order, Defendants are granted leave to file responsive motions as to those claims if necessary.

**NEW ORLEANS, LOUISIANA,** this __26th__ day of May, 2022.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[132] Rec. Doc. 32.